UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL MARTIN-LEVIER,

          Petitioner,

Case No. 2:21-cv-10435

HONORABLE STEPHEN J. MURPHY, III

v.

WARDEN JEREMY HOWARD,

          Respondent.

                              /

**OPINION AND ORDER DENYING HABEAS
PETITION [1], DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Crystal Martin-Levier was convicted in Oakland County Circuit Court of second-degree murder and sentenced to thirty to sixty years' imprisonment. Petitioner, through counsel, petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. She raised four claims for relief. For the reasons below, the Court will deny the petition and deny a certificate of appealability. The Court will also deny Petitioner leave to proceed in forma pauperis on appeal.

**BACKGROUND**

Petitioner's convictions arose from the murder of her boyfriend, Trenton Johnson, in December 2016. *People v. Martin-Levier*, No. 342095, 2019 WL 2517807, at *1 (Mich. Ct. App. June 18, 2019). At trial, Petitioner claimed that Johnson was physically and verbally abusive and that she killed him in self-defense. *Id.* She also claimed that "Johnson had limited and monitored her access to friends and family, frequently accused her of infidelity, and threatened to harm her with knives." *Id.*

1

In August 2016, Petitioner and Johnson had an altercation during which both individuals were physically injured. *Id.* The altercation prompted Petitioner to "stay[] away from Johnson for five days, but [she] eventually moved back in with him after he promised that he would get psychiatric help." *Id.*

In December 2016, the two had another violent altercation during which Johnson allegedly physically and sexually assaulted Petitioner. *Id.* The altercation ended when Petitioner stabbed Johnson in the hip while he was allegedly assaulting her. *Id.* Petitioner testified "that she blacked out after stabbing Johnson[] and did not remember anything else until she was arrested later that day. [Petitioner] remembered fearing that Johnson would kill her." *Id.* Johnson was later pronounced dead after sustaining five knife wounds to his abdomen, ribs, and hip. *Id.* at *2.

At trial, the State court allowed the prosecution to introduce testimony from Petitioner's ex-husband as rebuttal evidence "concerning acts of domestic violence that [Petitioner] had committed during their marriage [fifteen] years earlier." *Id.* The trial court found the evidence to be admissible if Petitioner "testified that she was a peaceful person who had never physically assaulted anyone, or if [she] presented the defense of self-defense." *Id.*

Petitioner presented expert testimony at trial from "a social worker who was qualified as an expert in domestic violence." *Id.* The social worker "testified that it was often difficult for victims of domestic violence to safely leave their abusers, and that a victim of domestic violence might seek an 'equalizer,' such as a weapon, to prevent further abuse." *Id.*

A jury convicted Petitioner of second-degree murder, and the trial court sentenced her to thirty to sixty years' imprisonment. *Id.* at *1–2. Petitioner appealed to the Michigan Court of Appeals and argued: (1) she was prejudiced by the admission of prior bad acts evidence; (2) the trial court violated her right to present a defense; (3) the trial court erred in instructing the jury on voluntary manslaughter; and (4) her sentence was disproportionate, disregarded mitigating factors, relied on materially untrue information, was not tailored to her circumstances; and (5) counsel was ineffective in failing to file a sentencing memorandum. *Id.* at *3–7. The Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* at *7. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On November 26, 2019, the Michigan Supreme Court denied leave to appeal. *People v. Martin-Levier*, 505 Mich. 871 (Mich. 2019).

## LEGAL STANDARD

Habeas review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, a State prisoner is entitled to a writ of habeas corpus only if she can show that the State court's adjudication of her claims

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a State court is "contrary to" clearly established federal law if the court arrives at a conclusion opposite to the Supreme Court on a question of law or if the court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a [S]tate court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant [S]tate-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"[A] [S]tate court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the [S]tate court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). And "even a strong case for relief does not mean the [S]tate court's contrary conclusion was unreasonable." *Id.* at 102 (citation omitted). Rather, "a habeas court must determine what arguments or theories supported or . . . could have supported, the [S]tate court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

A State court's factual determinations are entitled to a presumption of correctness on federal habeas review. § 2254(e)(1). A petitioner may rebut that presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–

4

61 (6th Cir. 1998). And habeas review is "limited to the record that was before the [S]tate court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

## DISCUSSION

Petitioner sought habeas corpus relief based on four grounds. ECF 1, PgID 25–43. First, Petitioner claimed that she was denied a fair trial when the trial court allowed unduly prejudicial evidence about her prior bad acts to be presented to the jury. *Id.* at 25–36. Second, Petitioner argued that the trial court caused the jury to be confused when it incorrectly instructed the jury on voluntary manslaughter because there was no "heat of passion" evidence. *Id.* at 37–39. Third, Petitioner claimed that her due process rights were violated when the trial court relied on materially untrue information at sentencing. *Id.* at 39–41. And fourth, Petitioner asserted that her Sixth Amendment right to counsel was violated when her trial counsel failed to file a sentencing memorandum which highlighted information that might have lowered the sentencing range. *Id.* at 41–43. The Court will address each claim in turn.

I. <u>Other Acts Evidence</u>

The first claim concerns the testimony of Petitioner's ex-husband, Kenneth Merritt. The prosecution called Merritt as a rebuttal witness after the defense rested. ECF 1-1, PgID 49. He testified that he was married to Petitioner in 1993 and lived with her until 2000. *Id.*; ECF 6-9, PgID 893. He also testified that Petitioner developed a gambling habit that she often asked Merritt to fund. ECF 6-9, PgID 895. Several times, Petitioner struck Merritt with an open hand when he refused to give her money for gambling. *Id.* at 896. Merritt testified that he finally decided to leave

5

Petitioner when she grabbed the steering wheel while he was driving at about 75 miles per hour, and he feared that the car would flip over. *Id.* at 899–900.

The Michigan Court of Appeals held that Merritt's testimony was properly admitted under Mich. Comp. Laws § 768.27b(1), which allows evidence of a defendant's other acts of domestic violence "for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." *Martin-Levier*, 2019 WL 2517807, at *3 (quoting Mich. Comp. Laws § 768.27b(1)). Such evidence is admissible where the charged offense *involves* domestic violence, which includes "[c]ausing or attempting to cause physical or mental harm to a family or household member." *Id.* (quoting Mich. Comp. Laws § 768.27b(6)(a)). The defendant need not actually be charged with domestic assault for admission of other-acts evidence under the statute. *Id.*

Petitioner maintained that the other-acts testimony by Merritt should have been excluded under Michigan Rules of Evidence 403, 404, and 405(a). ECF 1, PgID 29–36. But the claim is not cognizable on habeas review. Federal courts lack authority to intervene based on a perceived error of State law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Even if Petitioner's argument is broadly construed as raising a due process claim, habeas relief is not warranted. An evidentiary ruling violates the Due Process Clause only if the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States,* 493 U.S. 342, 352 (1990) (quotation omitted). "The category of infractions that violate fundamental

6

fairness is very narrow." *Estelle*, 502 U.S. at 73 (cleaned up). To violate due process, an evidentiary decision must "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (alteration and citations omitted).

Put simply, "[t]here is no clearly established Supreme Court precedent which holds that a [S]tate violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). And the Supreme Court has suggested that the admission of such testimony is more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352–53. Indeed, "the Supreme Court has never held (except perhaps within the capital sentencing context) that a State trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (cleaned up). There is thus no "clearly established federal law" to which the State court's decision could be "contrary" within the meaning of § 2254(d)(1). *Bugh*, 329 F.3d at 513. Petitioner is not entitled to relief on her first claim.

II.     Voluntary Manslaughter Instruction

Petitioner next argued that the trial court violated her right to a fair trial by giving a voluntary manslaughter jury instruction when the instruction was not supported by the evidence. Obtaining federal habeas relief for a jury instruction claim is "a difficult hill to climb." *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020). The jury instruction "must be considered in the context of the instructions as a whole and

the trial record." *Estelle*, 502 U.S. at 72 (citation omitted). To show that a jury instruction violates due process, a habeas petitioner must show "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (internal quotation marks and quotation omitted). And a federal court may not grant habeas relief on the ground that a jury instruction was incorrect under State law; instead, the relevant inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 71–72 (quotation and citations omitted).

To prove voluntary manslaughter under Michigan law, "one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control [her] passions." *Martin-Levier*, 2019 WL 2517807, at *5 (citation omitted). The Michigan Court of Appeals held that the voluntary manslaughter instruction was "supported by a rational view of the evidence" because Petitioner's "testimony that Johnson had abused her the previous night and was abusing her when she stabbed him could have supported a finding of provocation." *Id.*

Federal courts are bound by State courts' interpretation of State laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Because the Michigan Court of Appeals ruled that the evidence was sufficient to support the instruction under Michigan law, the Court must defer to that determination. *See Seymour*, 224 F.3d at 558 (explaining

8

that when a State court finds an instruction accurately reflects State law and is consistent with the evidence, a federal court on habeas review may not "question the [S]tate court's interpretation of its own law"). The Court will thus deny relief on the second claim.

III. Sentencing Claim

Petitioner also argued that habeas relief was warranted because the trial court relied on materially untrue information at sentencing. A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and "materially false" foundation that the defendant "had no opportunity to correct." *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, a petitioner must show that the court relied on the challenged information and that it was inaccurate. *Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007). Petitioner failed to show that the trial court relied on inaccurate information.

Petitioner claimed that the trial court's statement that she could have fled the scene is based on materially untrue assumptions. The trial court stated, "There was a front entrance and a back entrance and you could have r[u]n in and out of both of those doors a hundred times by the time he was able to catch . . . you." ECF 6-12, PgID 1034. Petitioner maintained that the testimony of the defense expert witness contradicted that statement and, accordingly, the trial court's statement was "equivalent to using 'materially untrue' assumptions." ECF 1, PgID 41 (quoting *Townsend*, 334 U.S. at 737).

9

Petitioner is incorrect. The Michigan Court of Appeals held that while the expert witness "testif[ied] in general about why a victim of domestic violence might not leave her abuser, [the expert witness] did not testify that [Petitioner] was unable to leave the house during Johnson's alleged assault." *Martin-Levier*, 2019 WL 2517807, at *6. The decision of the court of appeals that Petitioner's sentence was not based on inaccurate information is supported by the record. *See id.* The expert witness's testimony focused on the psychological reasons a victim might stay in an abusive relationship and was not specific to whether Petitioner could have physically left the premises on the night of the attack. *See id.* at *2. Although Petitioner disagrees with the trial court's interpretation of the evidence, she failed to show that the trial court's statements were inaccurate. The Court will therefore deny relief as to Petitioner's third claim.

IV. <u>Ineffective Assistance of Counsel</u>

Petitioner last argued that defense counsel was ineffective for failing to offer mitigating evidence about her prior convictions. An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668, 687–92 (1984). A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. For prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation and marks quotations omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner stated that the trial court should have been made aware of the following information: (1) her six prior federal convictions arose from a single case; she received a sentence of five-years' probation; and (2) and she was discharged from probation after only two years. *See* ECF 1, PgID 42–43. She argued that such information would have been reasonably likely to reduce her sentence.

But the Michigan Court of Appeals denied this claim because the objection would have been futile. In particular, the court of appeals noted that "the trial court was aware of the information included in the presentence investigation report, including information regarding the lenient sentence that [Petitioner] received for her federal convictions." *Martin-Levier*, 2019 WL 2517807, at *7. Thus, it was "difficult to see how reminding the trial court that [Petitioner] had only received probation for prior federal offenses would have altered the trial court's sentencing determination." *Id.*

The Court agrees that Petitioner failed to overcome the presumption that her lawyer's decision about what arguments to advance at sentencing stemmed from

11

reasonable strategy. Counsel reasonably could have concluded that the information in the presentence investigation report was enough to apprise the trial court about the circumstances of her prior convictions. The Michigan Court of Appeals' rejection of the ineffective assistance of counsel claim was thus a reasonable application of *Strickland*. Petitioner's fourth claim is denied.

## CONCLUSION

Petitioner failed to raise a viable reason for the Court to grant a writ of habeas corpus. Accordingly, the Court will deny the habeas petition. The Court will also deny a certificate of appealability because reasonable jurists would not debate that the petition lacks merit. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); 28 U.S.C. § 2253(c)(1)–(2); Fed. R. App. P. 22(b). Last, the Court will deny leave for Petitioner to appeal in forma pauperis because an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition [1] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal in forma pauperis is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: January 27, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 27, 2023, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager